UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14235-CIV-MAYNARD

**DANIEL JOHN RICHARDSON**,

    Plaintiff,

v.

**KILOLO KIJAKAZI,**[1]
Acting Commissioner of
Social Security Administration,

    Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 25)

This cause comes before me on Plaintiff's Motion for Summary Judgment, DE 25, and Defendant's Response in Opposition, DE 27. Plaintiff did not file a reply, and the time to do so has now passed. Upon consideration of the briefing and the record, and having held a hearing thereon, Plaintiff's Motion, DE 25, is **GRANTED.**

### BACKGROUND

This case involves a determination of the application of Plaintiff Daniel John Richardson ("Plaintiff") for disability insurance benefits ("DIB") filed on September 13, 2018. R. 152.[2] In his

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Andrew Saul as the Defendant. No further action need be taken to continue this suit consistent with the Social Security Act. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] References to "R. –" are to pages of the transcript of the administrative record filed at DE 15. The page numbers correspond to the sequential numbers at the lower right corner of the record and not the page numbers assigned by the court's electronic filing system.

application,[3] Plaintiff alleged disability beginning on June 19, 2009[4] due to post-traumatic stress disorder ("PTSD"), traumatic brain injury, severe anxiety, severe depression, anger issues, and insomnia. *See* R. 145-46, 248, 266, 270. After Plaintiff's application was denied initially and upon reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on January 14, 2020. R. 35-64. Plaintiff was represented at the hearing. Plaintiff and a Vocational Expert (VE) testified.

On January 30, 2020, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled as defined by the Social Security Act. R. 10-33. In doing so, the ALJ determined that Plaintiff's date last insured was June 30, 2016, and Plaintiff needed to establish disability on or before that date. R. 14. The ALJ determined that Plaintiff had the severe impairments of PTSD, bipolar disorder, attention deficit hyperactivity disorder, history of traumatic brain injury and cervical and lumbar disc disease. R. 17. The ALJ did not find Plaintiff's other impairments, including Plaintiff's medically determinable impairments of right shoulder impingement, tinnitus and headaches to be severe. *Id*. Upon consideration of the record, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b), with certain exceptions. R. 19. The ALJ found that Plaintiff was unable to perform past relevant work as a combat rifle crew member (DOT 378.684-104) or sports instructor (sky diving) (DOT 153.227-018) as actually or generally performed as defined in the *Dictionary of Occupational Titles*. R. 26. The ALJ determined, however, that Plaintiff was capable of performing other jobs that existed in significant number in the national economy, namely

---

[3] Plaintiff reports that this is his third application. DE 25 at 2. Plaintiff avers that due to the severity of his mental impairments he was unable to proceed with filing the appeal, and he missed his deadline. *Id.* at n.1. Plaintiff had filed a second claim, which was denied on September 29, 2015; and, again, due to his mental impairments, he was unable to timely file the appeal. *Id.*

[4] The onset date was amended to January 21, 2010. R. 37, 318.

cleaner/housekeeper (DOT 323.687-014), stock checker apparel (DOT 299.667-014), or electrical assembler (DOT 729.687-010), as generally performed.  R. 27.  Ultimately, the ALJ concluded that Plaintiff was not disabled.  R. 28.

Plaintiff requested administrative review of the ALJ's decision.  R. 9.  The Appeals Council denied Plaintiff's request, R. 1-4, consequently rendering the ALJ's decision "final."  42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's decision in this case.  Plaintiff has exhausted his administrative remedies and, as such, this case is ripe for review under 42 U.S.C. § 1383(c).

## STANDARD OF REVIEW

A district court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached.  *Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011); *see also Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a mere scintilla, but less than a preponderance") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, considering evidence favorable as well as unfavorable to the Commissioner's decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it.  *Dyer*, 395 F.3d at 1210.  It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner.  *Id*.

A claimant must be "disabled" to be eligible for SSI. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A claimant bears the burden of proving that she is disabled. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. §§ 404.1512(a), 416.912(a).

The Social Security Regulations require the ALJ to undertake a five-step, "sequential" analysis to determine if a plaintiff is disabled. At step one, the ALJ must determine if the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the ALJ determines the plaintiff is engaging in substantial gainful activity, then he or she is not disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). At step two, the ALJ must determine if the plaintiff suffers from a medically determinable impairment, or a combination of medically determinable impairments that is "severe". 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "severe" within the meaning of the regulations if it significantly limits a plaintiff's ability to perform basic work activities. An impairment is "not severe," however, when medical or other evidence establish just slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on a plaintiff's ability to work. *Id*. at §§ 404.1522, 416.922; Social Security Rulings ("SSRs") 85-28, 16-3p. At step three, the ALJ must determine if the plaintiff's impairment(s) meet or equal the criteria of an impairment listed under 20 C.F.R.

§§ 404, Subpart P, Appendix 1. If so, the plaintiff is considered disabled; if not, then the analysis proceeds to step four.

Step four is a two-prong analysis where the ALJ must assess: (1) the plaintiff's residual functional capacity ("RFC") and (2) the plaintiff's ability to return to his or her past work. The regulations define RFC as the most a plaintiff can still do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Once the ALJ determines the RFC, the ALJ must determine if the plaintiff has the RFC to perform any past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the plaintiff can return to his or her past relevant work, then the plaintiff is not disabled. If the plaintiff cannot perform past relevant work, then a prima facie case of disability is established and the analysis proceeds to step five where the burden shifts to the Social Security Administration to show that there is other work in the national economy that the plaintiff can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). The ALJ considers the plaintiff's RFC, age, education, and work experience to determine whether the plaintiff is capable of adjusting to other work. If the plaintiff can make an adjustment to other work that exists in the national economy, then the plaintiff is not disabled. If not, the plaintiff is considered disabled. 20 C.F. R. §§ 404.1520(g), 416.920(g).

**DECISION OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ in this case proceeded through the five-step analysis as follows: At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 21, 2010, through his date last insured of June 30, 2016. R. 16. At step two, the ALJ found Plaintiff's PTSD, bipolar disorder, attention deficit hyperactivity disorder, history of traumatic brain injury and cervical and lumbar disc disease to be severe impairments, but that Plaintiff's history of right shoulder impingement, tinnitus and headaches were non-severe. R. 17.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. R. 17-24. In making these findings, the ALJ determined that Plaintiff's mental impairments resulted in a "mild" limitation in the broad functional area of understanding, remembering, or applying information. R. 18. The ALJ determined that Plaintiff's mental impairments resulted in "moderate" limitation in the three remaining broad functional areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. R. 18-19. At step four, the ALJ found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except occasionally climb ladders, ropes and scaffolds; occasionally stoop; frequently climb ramps and stairs; frequently balance, kneel, crouch and crawl. He is capable of performing simple routine repetitive tasks for 2-hour segments over the course of an 8-hour day; respond appropriately to occasional changes in the routine work setting; capable of making simple work related decisions. He should avoid jobs that require dealing with the public; should have only occasional and nontransactional interactions with co-workers; and no more than occasional interaction with supervisors.

R. 19. Based on the VE's testimony, the ALJ determined that Plaintiff is not able to perform his past relevant work as a combat rifle crew member (DOT 378.684-104) or sports instructor (sky diving) (DOT 153.227-018) as actually or generally performed. R. 26. Based on the VE's testimony, however, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could have performed, i.e., cleaner/housekeeper (DOT 323.687-014), stock checker apparel (DOT 299.667-014), or electrical assembler (DOT 729.687-010), as generally performed. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 21, 2010, through June 30, 2016, Plaintiff's date last insured. *Id*.

### DISCUSSION

Plaintiff raises one issue on appeal—whether the ALJ provided sufficient rationale to find unpersuasive the opinion of treating psychologist Scott Fairchild. DE 25; DE 27. Plaintiff argues that the ALJ's Decision does not adequately address Dr. Fairchild's opinion in terms of supportability and consistency. DE 25 at 17-18. Plaintiff contends that the ALJ largely found Dr. Fairchild's opinions were not persuasive because an evaluation that Dr. Fairchild completed in December 2019 was "several years after the date last insured of June 30, 2016." *Id.* at 18-19. Plaintiff argues, however, that Dr. Fairchild was convinced prior to Plaintiff's date last insured that Plaintiff's mental health was a severe limitation to his ability to perform work. *Id.* Plaintiff also argues that other mental health providers agreed that his mental impairments were severe, and none of them provided opinions about his ability to function with respect to work-related activities. *Id.* at 18.

Defendant argues that the ALJ properly used the more recent regulations to find Dr. Fairchild's opinions not persuasive. DE 27 at 1-2. Defendant notes, *inter alia*, that Dr. Fairchild's opinions were dated approximately three years after Plaintiff's date last insured. DE 27 at 1-2. Thus, Defendant contends that Dr. Fairchild's opinions are irrelevant. R. 15-16. Defendant also argues that Dr. Fairchild's opinions were not supported by any of Plaintiff's treatment records from the relevant period and were inconsistent with other medical providers who treated Plaintiff during the relevant period. *Id.* at 2. Defendant further argues that Dr. Fairchild only saw Plaintiff six times before Plaintiff's date last insured, and there were no clinical findings associated with those visits.[5] *Id.* In addition, Defendant argues that other medical providers treating Plaintiff prior to his date last insured found Plaintiff to be cooperative, to have normal thought processes, normal

---

[5] Defendant disregards Dr. Fairchild's completion of a Disability Benefits Questionnaire, signed on May 4, 2015, which does include clinical findings. R. 606-11.

memory, and normal attention/concentration, which are inconsistent with Dr. Fairchild's opinions. *Id.* Consequently, says Defendant, the ALJ properly found Dr. Fairchild's opinions not persuasive considering the supportability and consistency factors under the current regulations. *Id.* Moreover, Defendant argues that the ALJ's Decision is supported by substantial evidence and should be affirmed. *Id.* at 20.

A. **The Applicable Regulatory Framework**

Because Plaintiff applied for benefits after March 27, 2017, the ALJ applied a more recently promulgated set of Social Security regulations for considering and articulating the medical opinions and prior administrative medical findings in this case. 20 C.F.R. § 404.1520c. Under these revised regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. § 404.1520c(a).

When a medical source provides a medical opinion or prior administrative medical finding, the SSA will consider that medical opinion or prior administrative medical finding using certain factors. 20 C.F.R. § 404.1520c(a). The factors are (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(c). The most important of these factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). The ALJ must explain its consideration of supportability and consistency in the decision. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to the extent to which a medical source has articulated support for his or her own opinion, while consistency refers to the relationship between the source's opinion and other evidence in the medical record. On this point, the regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and

"the more consistent a medical opinion(s) or prior administration medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 CFR §§ 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2). "In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record – familiar concepts within the framework of Social Security litigation." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, *3 (M.D. Fla. April 6, 2021) (emphasis in original). "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Mudge v. Saul*, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019) (citing, inter alia, 20 CFR § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.")).

**B.  Dr. Fairchild's Opinions**

Plaintiff saw Dr. Fairchild for therapy frequently from February 19, 2015[6] to March 23, 2015, and then again on September 9, 2015, and April 4, 2016. R. 600-17; 1977. Also, on May 4, 2015, Dr. Fairchild completed a detailed Disability Benefits Questionnaire pertaining to Plaintiff ("May 2015 Questionnaire"). R. 606-11. On December 3, 2019, Dr. Fairchild completed an evaluation report in reference to Plaintiff ("December 2019 Evaluation") (R. 1977-86). The report notes that Plaintiff had been seen by the U.S. Department of Veterans Affairs ("VA") since August

---

[6] Dr. Fairchild's first treatment note of record, dated February 27, 2015, is described as an "update." R. 600. Dr. Fairchild's evaluation, dated December 3, 2019, states that Dr. Fairchild started seeing Plaintiff "since February 19, 2015." R. 1977. Records of Plaintiff's visits with Dr. Fairchild prior to February 27, 2005, are not included in the transcripts.

2009, when the VA diagnosed him with PTSD and referred him to Sheppard Spinal Center for Traumatic Brain Injury.  *Id.*  Plaintiff began therapy with Dr. Fairchild in February 2015 "after [Plaintiff] ha[d] been unable to receive adequate treatment at the [U.S. Department of Veterans Affairs] ("VA")."  R. 70, 1977.  Dr. Fairchild's December 2019 Evaluation of Plaintiff addressed much of Plaintiff's personal history and record prior to Plaintiff's last insured date of June 13, 2016.[7]  R. 1977-86.

Dr. Fairchild described that Plaintiff served in active combat in the military from April 2002 to July 2009, at ages 18 to 25.  R. 71, 1978.  Plaintiff had a number of horrific experiences during this period.  While in Iraq, he watched firsthand as his platoon leader was killed by a "round in the face."  R. 71, 1978.  Also, Plaintiff's convoy was hit from the rear, and he was ordered to open fire on a vehicle involved in initiating the explosion after which the bodies pulled out of that vehicle turned out to be a family—a man, a woman, and two children.  *Id.*  Furthermore, Plaintiff was exposed to multiple explosions, including "rocket and mortar attacks and rocket propelled grenade launchers."  R. 72, 1979.  He is largely unable to hear in his right ear after repeatedly being in the proximity of a discharging M1A1 120 mm main cannon.  *Id.*

Plaintiff was additionally deployed to the Korengal Valley in Afghanistan, which is known as the "deadliest place on earth."  *Id.*  While there, Plaintiff suffered a rocket hit, which caused him to fly into the side of a wooden shed injuring his neck and back.  *Id.*  Plaintiff also described earning his second Bronze Star in the Korengal Valley after he spent the night covered in blood as a result of rescuing a friend who suffered a broken arm and had a double amputation once they were both medevacked.  *Id.*

---

[7] After the ALJ's opinion in this case, Dr. Fairchild wrote a letter to the Division of Disability Determinations, dated April 7, 2020, stating that his December 2019 Evaluation described Plaintiff's condition before June 13, 2016. R. 69. Even without this confirmation, however, it is apparent that the December 2019 Evaluation discussed Plaintiff's condition and history during the relevant period albeit in addition to Plaintiff's condition following the relevant period.

December 2019 Evaluation recounted Plaintiff's attempts at employment and vocational training following his military service. R. 73, 1980. Dr. Fairchild noted that Plaintiff attributed his dismissals from employment to his difficulty with interpersonal interactions. R. 70, 1977. Dr. Fairchild opined that Plaintiff "is socially limited by his PTSD diagnosis, dysphoria,[8] anxiety and rigidity" and that "[p]eriodically, the irritability and anger generated by the helplessness, intrudes upon his interactions with others." R. 75, 1982. Dr. Fairchild explained that Plaintiff's overwhelming emotional symptoms in response to his PTSD "have impacted on all aspects of his life and especially his ability to sustain gainful employment." R. 76, 1983. Dr. Fairchild stated that "repetitive terminations and dismissals from job attempts and his inability to support himself has significantly impacted [Plaintiff's] self-esteem, emotional condition and self-worth." *Id.* Dr. Fairchild also noted that Plaintiff's guilt has been exacerbated by his widowed mother having to contribute over $50,000 to his medical care and that "[h]e ruminates with survival guilt for the 13 fellow service members he lost while on active duty." *Id.*

On May 8, 2019, Dr. Fairchild completed a Medical Opinion Re: Ability to Do Work-Related Activities (Mental) Form. R. 1765-67. The opinion covered the period of February 19, 2015, through the present. *Id.* The form listed various mental abilities and aptitudes to do unskilled, semi-skilled and skilled work, among others. *Id.* Dr. Fairchild rated Plaintiff as unable to meet competitive standards (distracted from job activity 21 to 40 percent of the time) or as having no useful ability to function (cannot perform the activity on a sustained basis) for most categories listed. *Id.* Such categories included: (1) remember work-like procedures; (2) maintain attention for two-hour segments; (3) deal with normal work stress; and (4) maintain socially appropriate behavior. *Id.* Dr. Fairchild opined that Plaintiff was "unable to meet job standards

---

[8] The opposite of euphoria—a profound state of dissatisfaction.

due to volatility and impulsiveness." *Id.* Dr. Fairchild also opined that Plaintiff had "severe unpredictable PTSD symptoms to include explosive anger and aggressiveness." *Id.*

### C. The ALJ's Discussion of Dr. Fairchild's Opinion

The ALJ summarized Dr. Fairchild's opinions as follows:

> On May 8, 2019, Dr. Scott Fairchild provided a medical opinion regarding the claimant's ability to do work-related activities. He opined that the claimant had serious limitations to no ability to function in his mental abilities and aptitudes needed to do unskilled work. He had marked limitations to no ability to function in his mental abilities and aptitudes needed to do semi-skilled and skilled work. He had serious limitations to no ability to function in his mental abilities and aptitude needed to do particular types of jobs. Dr. Fairchild opined that the claimant was unable to function in any occupational capacity without being a threat to self or others. The claimant was unable to meet job standards due to volatility and impulsiveness. He had severe unpredictable PTSD symptoms that included explosive anger and aggressiveness. He isolated to avoid conflict. He would be absent from work more than four days per month. (Exhibit 15F)
>
> On December 3, 2019, three years after the date last insured, Dr. Scott Fairchild conducted a mental health evaluation. A mental status examination showed that the claimant's speech were fast and animated. He was oriented; at time he appeared distant and confused. His affect was frustrated and angry. He had deficits in concentration. His general memory was intact. He had extreme word findings difficulties. He had good common sense understanding. He had insight into his behavior and limitations. His decision making ability had become increasingly restricted. Dr. Scott Fairchild stated that the claimant was experiencing overwhelming emotional symptoms in response to his PTSD. These symptoms have impacted on all aspects of his life and especially his ability to sustain gainful employment. His condition is longstanding and occupationally debilitating. (Exhibit 24F)

R. 25-26. The ALJ found Dr. Fairchild's opinions unpersuasive as follows:

> The undersigned finds that Dr. Fairchild's opinions in Exhibits 15F and 24F are not consistent or supported by the treatment records or objective clinical findings. As noted above, the examination in December 2019 is several years after the relevant time-period. Moreover, a review of Dr. Fairchild's records during the relevant time period, shows there were only 4 visits, none of which contained any mental status examinations or clinical findings (EX 5F). Moreover, his opinion is not consistent with the exam findings of Dr. Bunt or the limited examinations at the VA. Accordingly, Dr. Fairchild's opinions are not persuasive.

R. 26.

D. <u>Analysis</u>

I find that Plaintiff's Motion for Summary Judgment is due to be granted for several reasons. First, Defendant's contention that Dr. Fairchild's December 2019 evaluation "contains no indication from Dr. Fairchild about what Plaintiff's condition was like during the relevant period (January 21, 2010 to June 30, 2016)," DE 27 at 15-16, is incorrect. The December 2019 Evaluation discussed Plaintiff's condition and circumstances during the relevant period, including the history of Plaintiff's illness, Plaintiff's personal and family history, Plaintiff's traumatic experience during military service, and Plaintiff's unsuccessful work attempts, which included terminations and dismissals due to his impairments. R. 1977-1981, 1983. In particular, the December 2019 Evaluation explained why, in Dr. Fairchild's opinion, Plaintiff was unsuccessful in his attempts to maintain employment, or schooling that would lead to employment, following his honorable discharge from the armed services. Specifically, Dr. Fairchild noted Plaintiff's failed employment and education attempts as follows: (1) attended Oglethorpe University in Atlanta from September 2009 to January 2010, when he was medically withdrawn; (2) worked for Wind Tunnel from July 2010 to February 2011, when he was dismissed for conflict; (3) worked for PETCO for two weeks in January 2013; (4) attended school to acquire vocational training from July 2013 to August of 2013; and (5) started school again in January of 2014 and stopped in April 2015. R. 1980. With respect to his school endeavor from January 2014 to April 2015, Dr. Fairchild notes next to it "TBI," which he explained as Traumatic Brain Injury impairment that caused Plaintiff to have difficulty in focusing for extended periods of time. R. 1981. Therefore, contrary to Defendant's position, Dr. Fairchild's December 2019 Evaluation is relevant.

Second, to the extent that the ALJ dismissed Dr. Fairchild's December 2019 Evaluation because it is "several years after the relevant time period," I likewise disagree. Although it was

prepared well after Plaintiff's date last insured, it clearly addresses Plaintiff's condition during the relevant period as well as beyond it. Moreover, Dr. Fairchild has a basis for addressing Plaintiff's condition during the relevant period since he began treating Plaintiff more than a year before Plaintiff's date last insured. Indeed, Dr. Fairchild's medical opinion, rendered in May 2019 (just six months before the December 2019 Evaluation) clearly states that Dr. Fairchild's opinion about Plaintiff's mental abilities and aptitudes covered the time period beginning February 19, 2015, which is squarely within the relevant period. R. 1765. Thus, the findings in the December 2019 Evaluation relate back to Dr. Fairchild's medical opinion, as well as Dr. Fairchild's treatment of Plaintiff prior to the date last insured.

Third, I find evidence in the record of supportability for Dr. Fairchild's opinions in contrast to the ALJ's conclusory position that his opinions are not supported. In particular, Dr. Fairchild completed his May 2015 Questionnaire based upon his review of Plaintiff's records of service, which would include his own. Dr. Fairchild noted on the questionnaire that Plaintiff's "condition ha[d] deteriorated to the point where [he] at times experiences a loss of control." R. 608. Also, Dr. Fairchild specifically wrote that Plaintiff suffered with the following symptoms: (1) unprovoked irritability with periods of verbal violence; (2) fatigue; (3) low motivation; (4) road rage; (5) isolation; (6) hypersensitivity to security issues; and (7) sense of foreshortened future and purposelessness. R. 610. Dr. Fairchild attributed Plaintiff's PTSD and traumatic brain injury to his combat service. R. 611. Dr. Fairchild also checked off form descriptions of Plaintiff's PTSD symptoms, which included "[r]ecurrent and distressing recollections of the event" and "[a]cting or feeling as if the traumatic event were recurring." R. 609. Dr. Fairchild's observations in May 2015 support the opinions he rendered in December 2019 and in May 2019.

Additionally, Dr. Fairchild included clinical findings in his *fifth* documented treatment of Plaintiff on April 4, 2016—the ALJ incorrectly notes only four—contrary to the ALJs contention that none of the treatment notes included clinical findings. Indeed, Dr. Fairchild's treatment notes listed scores for Plaintiff as follows: GAF 36, GARF 28, and SOFAS 43. Also, Dr. Fairchild observed that Plaintiff continued to experience symptoms consistent with his prior observations. R. 616-17. For example, Dr. Fairchild noted that Plaintiff expressed "an impending sense of doom" and had related that the platoon leader who was killed by a round in the face was "staring at [him] and his mouth was moving." R. 616. Therefore, I find evidence of supportability for Dr. Fairchild's opinions.

Fourth, I find that the ALJ fails to explain why Dr. Fairchild's opinions were inconsistent with the record. The ALJ is required to articulate factual support for why Dr. Fairchild's opinion is inconsistent, and to "build the requisite accurate and logical bridge from the evidence to h[er] conclusion." *Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-1470-LRH, 2022 WL 195431, at *5-*6 (M.D. Fla. Jan. 21, 2022) ("Absent an explanation from the ALJ, the Court cannot say that the ALJ's determination that the opinion is inconsistent with the mental health records is supported by substantial evidence.") (internal quotation marks and citation omitted).

Here, the ALJ merely states in a conclusory fashion that the findings of Dr. Bunt, other examiners at the VA or other medical sources are inconsistent with Dr. Fairchild's opinions. It is not obvious, however, that this is the case. For example, Plaintiff was referred to Dr. Fairchild after VA psychiatrist Dr. Yurdakul Baker-Acted him on January 23, 2015. DE 25 at 18; R. 1377-81. Dr. Yurdakul observed, among other things, that Plaintiff's mother reported that he had threatened her—told her he was going to chop her up and throw her in the lake, had kept her prisoner in her home, had knocked his father down, and had broken things in the home. R. 1378.

Plaintiff's mother described him as very volatile. *Id.* Dr. Yurdakul even advised Plaintiff's mother to "get the guns out of the house," and treatment notes indicate that she agreed to do it that day. R. 1380. Furthermore, even after his release, on March 12, 2015, psychiatrist Dr. Richard Bunt noted that Plaintiff reported "his mood has been angry" and his overall level of anxiety was elevated at 8-9/10. R. 580-81. Thus, this evidence is consistent with Dr. Fairchild's opinion regarding Plaintiff's "severe unpredictable PTSD symptoms to include explosive anger and aggressiveness." R. 1765-67.

Additionally, there is evidence supporting Dr. Fairchild's opinion regarding Plaintiff's deficits in concentration and the impact of such deficits on his ability to perform work-related functions. For example, Dr. Bunt noted that Plaintiff reported a lifetime history of difficulty with attention/concentration. R. 544-45. Dr. Bunt also noted declining effectiveness of medication to improve Plaintiff's attention and concentration. *See* R. 550, 555. In September 2014 and thereafter, Dr. Bunt noted that Plaintiff reported "no improvement in attention and concentration with Vyvanse." R. 560, 570, 576, 580, 585, 590, 595. Also, on March 18, 2015, VA staff psychiatrist Dr. Mira Sachdev reported that Plaintiff's illness "ha[d] significantly interfered with his academic achievement" and that "[h]e ha[d] been advised to withdraw from school at this point and seek more intensive treatment." R. 1319. Furthermore, on May 5, 2016, VA staff psychologist Dr. William Riebsame reported that Plaintiff had symptoms attributable to PTSD, which Dr. Riebsame described as "[i]rritability; resentment; *distractibility*; impulsivity; [and] limited social interaction. R. 1170 (emphasis added). Thus, there is evidence that is consistent with Dr. Fairchild's opinion, among others, that Plaintiff would be challenged to maintain his attention for two-hour segments. R. 1765-67. Moreover, Dr. Fairchild's opinion in this regard conflicts with

the ALJ's RFC finding that Plaintiff is "capable of performing simple routine repetitive tasks for 2-hour segments over the course of an 8-hour day." R. 19.

Without further explanation as to why the ALJ finds Dr. Fairchild's opinion inconsistent, it is not possible to determine that substantial evidence exists to support such a finding. Furthermore, although Defendant offers explanation as to why Dr. Fairchild's opinion is inconsistent (DE 27 at 16-17), the Court may not accept Defendant's posthoc rationalizations to affirm the ALJ's decision. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) ("We decline, however, to affirm simply because some rationale might have supported the ALJ's conclusion."). Remand is therefore appropriate.

## CONCLUSION

The ALJ's conclusion that Dr. Fairchild's opinion is inconsistent with, and completely lacks support from, the medical evidence of record is unsupported by substantial evidence, and Plaintiff was prejudiced thereby. It is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (DE 28) is **GRANTED**.
2. Defendant's administrative decision is **VACATED AND REMANDED** to the Commissioner of Social Security, pursuant to sentence four of 42 U.S.C. § 405 (g). On remand, the Commissioner is instructed to conduct such further proceedings as are necessary to issue a new decision based on substantial evidence and proper legal standards.

3. The Court will separately issue a judgment in accordance with Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 31st day of March 2022.

_____
SHANIEK M. MAYNARD
U.S. MAGISTRATE JUDGE